**UNION WESLEY A.M.E. ZION CHURCH, Appellant,**

v.

**RIDER ENTERPRISES, INC., Appellee.**

**HERNDON LUMBER & MILLWORK, INC., Appellant,**

v.

**UNION WESLEY A.M.E. ZION CHURCH, Appellee.**

**Nos. 10233, 10299.**

District of Columbia.Court of Appeals.

Argued Aug. 26, 1976.

Decided Feb. 10, 1977.

Robert R. Redmon, Washington, D.C., for Union Wesley A.M.E. Zion Church.

David E. Manoogian, Silver Spring, Md., for Rider Enterprises, Inc.

Sebert H. Keiffer, Washington, D.C., for Herndon Lumber & Millwork, Inc.

Before KERN, GALLAGHER, and HARRIS, Associate Judges.

KERN, Associate Judge:

Union Wesley A.M.E. Zion Church (Zion) contracted with Alfred A. Altimont, Inc. (Altimont), a general contractor, to do a certain construction project; Altimont in turn subcontracted with Rider Enterprises, Inc. (Rider) for electrical work and with Herndon Lumber & Millwork, Inc. (Herndon) for lumber materials. When $38,000 worth of work remained to be performed by Altimont for Zion, a dispute arose between them and Altimont walked off the project.

When it became known that Altimont had abandoned the project, Herndon and four other subcontractors filed mechanic's lien notices against Zion's property for amounts *they were owed by Altimont*. Thereafter, in order to induce the four other subcontractors to continue work on the project, Zion paid some $7,600 directly to these four subcontractors on their lien claims. Herndon's claim remained unpaid.

Herndon subsequently brought suit to enforce its mechanic's lien against Zion's property, alleging that Zion failed to comply with D.C.Code 1973, § 38–106, which provides in pertinent part:

> After notice shall be filed by said party employed under the original contractor . . . the owner shall be bound to retain out of any *subsequent payments becoming due to the contractor* a sufficient amount to satisfy any indebtedness due from said contractor to the said subcontractor . . . .. (Emphasis added.)

Herndon argues in essence that if Altimont had not walked off the job, but instead had completed Zion's project, Zion would have owed Altimont $38,000. Since the four subcontractors whose liens Zion did pay had proceeded with work on Zion's project toward its ultimate completion, Zion's payments to these four lienors constituted "subsequent payments becoming due to the contractor" within the meaning of Section 38–106. Furthermore, Herndon argues that since the lien claims of these four lienors were for work already performed on the project prior to Altimont's abandonment, any payment to the subcontractors for that work in effect constitutes a payment to Altimont because Zion's only liability under its construction contract with Altimont for this "preabandonment work" was to Altimont. Hence, Herndon concludes, Zion should have retained sufficient funds out of the amounts paid the other four subcontractors to satisfy Herndon's mechanic's lien.

At the conclusion of Zion's case the trial court denied Herndon's motion for a directed verdict and we are asked to reverse this ruling. We conclude that this ruling must stand in light of the failure of the evidence adduced at trial to show that Zion's payments to the four subcontractors were in any way connected with Zion's prior contractual relationship with, and obligations to, Altimont. Specifically, Herndon failed to show that at the time of Zion's payments to the four subcontractors, Zion (a) owed Altimont anything, (b) thought it owed Altimont anything, or (c) wanted its payments to the subcontractors credited to any running account it had with Altimont. To the contrary, it appears that Zion considered the payments it made to the subcontractors to be a cost of completing the project *additional* to whatever financial obligation it might have had to Altimont under their construction contract. There is no indication that Zion ever expected to or ever did recoup this additional cost, *viz.*, the payments to the four subcontractors, from Altimont by way of a credit or other offset.

We contrast the instant situation with that in *Spencer v. Old Stein Grill,* 194 F.

Supp. 274 (D.D.C.1961), in which the federal district court held that Section 38–106 was applicable where, following the general contractor's breach, an owner made payments to subcontractors for "pre-abandonment work" while leaving unpaid the claim of a subcontractor-lienor. In that case, however, the owner made his payments to the subcontractors by drawing a check to the order of the general contractor, obtaining the general contractor's endorsement, and then turning the check over to the subcontractors. Moreover, the owner obtained an acknowledgement from the general contractor of other payments the owner had made directly to the subcontractors. In light of these facts, the court concluded that although the payments were "to" the subcontractors and that the general contractor was a mere "conduit," they were "payments becoming due to the contractor" within the statute's meaning. In contrast, Herndon did not allege or prove any action by Zion here similar to that taken by the owner in *Spencer*. We conclude that since there was no evidence that Zion attempted to diminish, or did diminish, its obligation to Altimont by virtue of making direct payments to the four subcontractor-lienors (other than Herndon), Zion did not violate Section 38–106. Upon this record Herndon has failed to demonstrate it is entitled to a reversal of the trial court's ruling.

■ We turn now to review the judgment rendered by the trial court in favor of Rider, the electrical subcontractor, from which Zion appeals. The parties stipulate that after Altimont walked off the project, Rider and Zion orally agreed that Rider would complete the electrical work on the job and Zion would pay (1) for this subsequent work as well as for (2) that amount owed Rider by Altimont, the general contractor, for electrical work already done. Zion vigorously asserts that D.C.Code 1973, § 38–121[1] renders its oral promise unenforceable, but the trial court ruled otherwise. On appeal Zion does not dispute that the enforcement of its oral promise is not barred by the Statutes of Frauds, D.C.Code 1973, § 28–3502.[2] It argues, however, that Section 38–121 establishes a stricter standard for the enforcement of an owner's oral promise to a subcontractor to pay his general contractor's debt.

We first note that a comparison of the language contained in each of Sections 38–121 and 28–3502 does not support Zion's contention that the two statutory provisions establish *different* standards for the enforcement of oral promises to pay the debt of another. While Section 38–121 is specifically concerned with an owner's personal liability "for the amount due to him [the subcontractor] from said original contractor," Section 28–3502 is concerned with *any* defendant's promise "to answer for the debt . . . of another person." Both provisions require a "special promise" by the promisor; and finally, where Section 38–121 requires that the promise be "in

---

1. D.C.Code 1973, § 38–121 reads:

    No subcontractor, materialman, or workman employed under the original contractor shall be entitled to a personal judgment or decree against the owner of the premises for the amount due to him from said original contractor, except upon a special promise of such owner, in writing, for a sufficient consideration, to be answerable for the same.

2. D.C.Code 1973, § 28–3502 provides in pertinent part:

    An action may not be brought . . . to charge the defendant upon a special promise to answer for the debt, default, or miscarriage of another person . . . unless the agreement upon which the action is brought, or a memorandum or note

thereof, is in writing, which need not state the consideration and signed by the party to be charged therewith or a person authorized by him.

According to the "leading object" rule, Zion's promise would be enforceable: "[W]hen the leading object of the promisor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute." 2 CORBIN ON CONTRACTS § 366 at 274 (3rd ed. 1950). *See Williamson, To Use of Windsor v. Hill*, 3 Mackey (14 D.C.) 100 (1884); 2 CORBIN, *supra*, § 369; RESTATEMENT OF CONTRACTS § 184 (1932); Annot., 99 A.L.R. 79, 110, 118 (1935).

writing," Section 28–3502 precludes enforcement "unless the agreement . . . or a memorandum or note thereof, is in writing." Given the minor difference between the language employed in each section, we are unable to conclude that Section 38–121 requires a result different from that reached under the Statute of Frauds on the question of the enforceability of Rider's oral agreement.

The keystone of Zion's argument is that since Section 38–121 was enacted at the same time the Statute of Frauds was codified in 1901, the *only* reason for its enactment was a Congressional "mandate" to treat the enforcement of an owner's promise to answer for the general contractor's debt to the subcontractor *more strictly* than the promise of "any defendant" to answer for the debt of another. Examination of the mechanic's lien provisions of Title 38 discloses a more plausible reason for its enactment, however. Preliminarily, Section 38–106 imposes on the owner who has received notice of a subcontractor's claim against a general contractor the duty to withhold from any subsequent payments to the general contractor an amount sufficient to satisfy the subcontractor's claim. Therefore, it would seem that Section 38–121, in precluding the recovery of a personal judgment against the owner, makes clear that if the owner complies with his Section 38–106 duty by withholding payments from the general contractor, the subcontractor's recourse is either against the party he is in contractual privity with, *i. e.*, the general contractor, or against the owner's property by way of enforcement of the mechanic's lien. And Section 38–121 would also seem to make clear that if the owner fails to comply with his Section 38–106 duty, then the subcontractor's recourse is again either to obtain a *personal* judgment against the general contractor or to *proceed in rem* against the owner's property. He may *not* recover a personal judgment against the owner.[3]

In sum, we view both the Statute of Frauds and Section 38–121 as having the same purpose: to prevent perjury and fraud and to reduce litigation by requiring that agreements, except in certain cases, be put in writing. It is conceded that enforcement of the agreement between Zion and Rider would not be barred by the Statute of Frauds. It is our conclusion that this agreement should also be excepted from the reach of Section 38–121 [4] and be enforceable.[5] Accordingly, the trial court's judgment in both cases on appeal is

*Affirmed.*

3. Our conclusion that the likely purpose of Section 38–121 was to make clear that a subcontractor could not obtain a personal judgment against the owner for what the general contractor owed the subcontractor is bolstered by the fact that District of Columbia law prior to the enactment of Section 38–121 in 1901 gave a subcontractor the right to bring a *personal action* against the owner as well as the right to file a mechanic's lien against the owner's property. *See* Act of May 6, 1870, ch. 89, § 1, 16 Stat. 119; *Monroe & Co. v. Hannan*, 7 Mackey (18 D.C.) 197 (1889). Thus Section 38–121, as enacted in 1901, serves the purpose of eliminating the subcontractor's right to proceed *in personam* against the owner.

4. *Mathews v. Libbey Bros.*, 42 App.D.C. 272 (1914), does not persuade us to reach a different result. The contested issue in that case was the conflicts of law question whether Maryland or District of Columbia law controlled. Neither the parties nor the court raised any question as to the result that would be reached if Section 38–121 governed the enforcement of the owner's oral promise.

5. Our holding is that Zion's oral promise is enforceable because we do not choose to interpret Section 38–121 any differently than Zion concedes the Statute of Frauds would have been interpreted. Since our decision does not turn on *which* statute is applied, we need not pass on the initial issue posed by the parties, namely whether Title 38, which deals with mechanic's liens, is applicable to this situation in which (a) the subcontractor-promisee is not attempting to enforce a mechanic's lien, and (b) before the case was submitted, to the jury, counsel for Zion agreed that it was "a simple breach of contract case, oral contract" which was "outside the scope of the mechanical lien statute."